# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EDDIE LAMONT VIRGIL,**
    Plaintiff,

v.                            Case No. 19-C-813

**SHERIFF JIM JOHNSON,** *et al.*,
    Defendants.

## ORDER

Plaintiff Eddie Lamont Virgil, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. The case was initially assigned to U.S. Magistrate Judge David E. Jones but was referred to me for screening. I screened the plaintiff's complaint and allowed him to proceed on Eighth Amendment clams against two defendants and on an official-capacity claim against Ozaukee County Sheriff Jim Johnson. After the defendants answered, the case was reassigned to me. The defendants now move for summary judgment.

## I. BACKGROUND[1]

### A. The Parties

The plaintiff was transferred to the Ozaukee County Jail (Jail) from Dodge Correctional Institution on May 10, 2019. ECF No. 29, ¶ 1. He sues Registered Nurse

---

[1] Facts in this section are taken from the defendants' proposed findings of fact and declarations in support of her motion for summary judgment, ECF Nos. 29–32, and the plaintiff's response to the defendants' proposed facts and declaration in opposition to the defendants' motion, ECF No. 34–35. I will consider each party's proposed facts only to the extent they are supported by evidence in the record. *See* Fed. R. Civ. Pro. 56(c)(1); Civil L. R. 56(b)(1)(C)(i) and (2)(B)(i)–(ii). I will deem admitted any uncontroverted fact,

Cheryl Gnodtke and Ozaukee County Sheriff Jim Johnson. ECF No. 29 at 1; ECF No. 32, ¶ 1. The plaintiff also asserted a claim against "Medical Staff #1300." ECF No. 1 at 1. I ordered the plaintiff to identify the name of Medial Staff #1300 within forty-five days of the named defendants appearing in this case. ECF No. 10 at 8. On July 22, 2019, the plaintiff submitted a letter explaining that Gnodtke is Medical Staff #1300. ECF No. 12. Because Medical Staff #1300 and Gnodtke are the same person, I will remove Medical Staff #1300 from the caption.

**B.     Plaintiff's Complaint[2]**

The plaintiff stated that, while at Dodge Correctional Institution, he had informed a physician that he was suffering chronic pain from gunshot wounds he suffered in 1998 and bullets that remained lodged in his chest and back. ECF No. 1 at 2. He received three packs of 600mg ibuprofen to treat his pain, but those pills lasted only fourteen days and were not permitted to be refilled. *Id.* at 2–3. Once at the Jail, the plaintiff was told he would have to pay for ibuprofen, so he refused the medication and returned it to the Health Services Unit. *Id.* at 2. The plaintiff stated that a nurse at the Jail told him she would ask a doctor about providing him a long-term prescription for ibuprofen, but "that never happen[ed]." *Id.* at 3. The plaintiff grieved the matter but was told that, pursuant to Jail

---

*see* Civil L. R. 56(b)(4), and will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts, *see* Civil L. R. 56(b)(6).

[2] Because the plaintiff's complaint is verified, I will consider the contentions in the complaint as I would in an affidavit for purposes of this decision. *See Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013); *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996).

2

Case 2:19-cv-00813-LA   Filed 06/29/20   Page 2 of 10   Document 38

policy, he would have to purchase ibuprofen from the commissary. *Id.* He wrote to Sherriff Johnson but received no response. *Id.*

**C.     The Defendants' Proposed Facts**

The defendants reiterate the plaintiff's allegations from his complaint and fill in other details. Nurse Carrie Cable (who is not a defendant) saw the plaintiff on May 11, 2019, as part of the intake program into the Jail. ECF No. 29, ¶ 4. Nurse Cable took the plaintiff's temperature and blood pressure and asked about his medical history. ECF No. 30-1 at 3–4. She was the nurse who told the plaintiff she would ask a doctor about extending his ibuprofen prescription. *Id.* at 5; ECF No. 29, ¶ 5.

The plaintiff submitted an Inmate Request slip on May 20, 2019, to follow up on the potential extension of his prescription. ECF No. 29, ¶ 6. Defendant Gnodtke reviewed the plaintiff's medical chart, and on May 21, 2019, she responded to his request and stated that his prior prescription had expired with no refills. *Id.*, ¶ 7; ECF No. 32-1. She explained that, pursuant to the Jail's inmate handbook, "he would need to purchase Ibuprofen or Tylenol from the Commissary" because his chronic pain was deemed "not urgent." ECF No. 32, ¶¶ 2–3.

The plaintiff received three packs of ibuprofen on May 23, 2019, but was told that he would have to pay for them. ECF No. 29, ¶ 15; ECF No. 30-1 at 17. The plaintiff returned the ibuprofen the same day because he did not want to pay for it. ECF No. 29, ¶¶ 15–16; ECF No. 30-1 at 18. Also the same day, the plaintiff submitted a grievance requesting treatment for his pain and complaining about being charged for ibuprofen. ECF No. 29, ¶ 10; ECF No. 31-2. A deputy at the Jail (who is not a defendant) responded that without a doctor's order for long-term prescription medication, the plaintiff would need to

3

purchase ibuprofen from the commissary to treat his pain. ECF No. 29, ¶ 11; ECF No. 31-3 at 1. The plaintiff never attempted to purchase ibuprofen from the commissary or asked about the procedure for ordering the medication. ECF No. 29, ¶¶ 19, 25.

Nurse Gnodtke also responded to the plaintiff's May 23, 2019 grievance in writing and, like the deputy, advised the plaintiff to purchase ibuprofen from the commissary to treat his chronic pain. ECF No. 29, ¶ 17; ECF No. 31-3 at 2. She informed the plaintiff that, per the Jail's inmate handbook, "[p]re-existing conditions will not be treated at the Ozaukee County Jail unless the condition is deemed to be in need of urgent treatment by our medical staff." ECF No. 29, ¶ 13; ECF No. 31-1 at 21–22; ECF No. 31-3 at 2. Gnodtke told the plaintiff that he could purchase ibuprofen from the Jail commissary, but neither the medical staff nor Jail would distribute over-the-counter products to him. ECF No. 31-3 at 2. She further advised the plaintiff, also as is stated in the inmate handbook, that inmates "are responsible for the cost of all over-the-counter products" at the Jail, and indigent inmates may obtain the medication through a negative billing system. ECF No. 29, ¶¶ 8, 13; ECF No. 31-1 at 20; ECF No. 31-3 at 2. The plaintiff does not contest what Gnodtke told him but asserts that he did not have to pay for other medication he received to treat high blood pressure. ECF No. 34, ¶ 8. The plaintiff never saw Gnodtke face-to-face for treatment. ECF No. 30-1 at 8.

**D.     The Plaintiff's Deposition and Proposed Facts**

The defendants deposed the plaintiff during discovery. The plaintiff stated during the deposition that he was aware that the cost of purchasing ibuprofen would be deducted from his prison account or, if he did not have sufficient funds, would put his account in a negative balance. ECF No. 29, ¶¶ 20–21; ECF No. 30-1 at 22. In his proposed facts, the

4

plaintiff contradicts his previous statement and insists he was not aware his account would show a negative balance if he could not afford the medication but was aware "that the Jail will charge for the Ibuprofen." ECF No. 34, ¶ 21.

The plaintiff insisted that because he "was a warden of the state," having transferred to the Jail from Dodge Correctional Institution, his health care was "supposed to be provided for." ECF No. 30-1 at 9. The plaintiff similarly asserts in his proposed facts that his "pain should have been address[ed] by the State." ECF No. 34, ¶ 25. He did not provide a specific rule, law, or regulation that entitled him to free mediation at the Jail because he had been transferred from a state prison. ECF No. 29, ¶ 23; ECF No. 30-1 at 38–39. He stated, as noted above, that he did not have to pay for medication he received to treat his high blood pressure, also a preexisting condition, but he explained that medication "came with me from Dodge" and was not provided at or by the Jail. ECF No. 30-1 at 15. The plaintiff admitted that he had funds in his Jail account that he used to pay for copies of legal work and telephone time. *Id.* at 25.

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* "[D]isputed facts that are not outcome-determinative are not material and will not preclude summary judgment." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

5

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**A.    Eighth Amendment Standard**

I review the plaintiff's claim about the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). To show a valid Eighth Amendment claim, the plaintiff must demonstrate both that he "suffered from an objectively serious medical condition" and that the defendant was "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless she subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837; *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835–36; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Nor do medical malpractice or "mere disagreement with a doctor's

6

medical judgment" suffice to demonstrate deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106).

The plaintiff claims that Nurse Gnodtke refused to provide him ibuprofen free of charge and instead adhered to the Jail's policy not to dispense over-the-counter medication for chronic conditions. Although the plaintiff's pain may have been chronic, he provides no evidence, not even an affidavit, describing the severity of his pain. There is no evidence that the decision not to provide the plaintiff free ibuprofen for his chronic pain, even if it were medically erroneous, disregarded an *excessive* risk to the plaintiff's health or safety, as is necessary to constitute an Eighth Amendment violation. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Farmer*, 511 U.S. at 837). Nor has the plaintiff shown that Gnodtke disregarded the plaintiff's complaints of chronic pain. She responded to his grievances and told him that he could obtain the medication sought from the commissary. It is undisputed that the plaintiff was not cut off from access to the medication; he merely was told he would have to pay for it pursuant to the Jail's policy. Gnodtke is not responsible for creating the policy, she merely followed it. Responding to the plaintiff's grievances in this way did not render her personally liable for any constitutional violation caused by the Jail's policy of charging inmates for over-the-counter medications. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Gnodtke is entitled to judgment as a matter of law.

I also allowed the plaintiff to proceed on a municipal liability claim against Ozaukee County based on the Jail's policy of not providing free medication for chronic conditions. ECF No. 10 at 9. A municipality may "be held liable under § 1983 only for its own violations of federal law." *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010) (citing *Monell*

7

*v. Dep't. of Soc. Serv.*, 436 U.S. 658, 694 (1978)). To demonstrate municipal liability, the plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017) (quoting *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The plaintiff fails to satisfy this standard. He submitted no evidence linking the Jail's policy to Ozaukee County itself. And even if he had, the policy in question is not unconstitutional. It does not violate the constitution for the Jail to charge a fee for ibuprofen and other over-the-counter medications, so long as the inmate is able to pay the fee. *See Poole v. Isaacs*, 703 F.3d 1024, 1026–27 (7th Cir. 2012) (holding that "the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"); *Conley v. Anglin*, 513 F. App'x 598, 602 (7th Cir. 2013) ("It is not deliberate indifference for prison medical professionals to insist that a prisoner pay the required co-payment before receiving care when he has the ability to pay."). The plaintiff does not assert that he was unable to afford the ibuprofen or that the cost for the medication was unreasonable. In fact, the plaintiff had money to pay for other Jail services, including telephone time and copies of legal papers. He could have used those funds to pay for the ibuprofen but chose not to. The plaintiff provides no law, rule, or regulation to support his

8

Case 2:19-cv-00813-LA    Filed 06/29/20    Page 8 of 10    Document 38

assertion that he was entitled to receive ibuprofen free of charge as a state prisoner temporarily housed at a county jail.

Even if he lacked the funds to pay for the medication, the plaintiff still would have been able to obtain it. The commissary would have provided the medication and placed his Jail account in a negative balance. The plaintiff admitted during his deposition that he was aware he could obtain the ibuprofen even if he were indigent. That fact distinguishes this case from *Rowe v. Gibson*, 798 F.3d 622, 627–28 (7th Cir. 2015), in which the Seventh Circuit opined that prison nurses were deliberately indifferent for not providing free medication to an indigent prisoner who otherwise was unable to obtain it or referring the matter to a doctor for further evaluation and treatment. Sheriff Johnson, against whom I construed the plaintiff's Ozaukee County municipal liability claim, is entitled to judgment as a matter of law.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that Medical Staff #1300 is removed from the caption.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 27) is **GRANTED**. This case is **DISMISSED**. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. I may extend this deadline if a party timely requests an extension and

9

Case 2:19-cv-00813-LA   Filed 06/29/20   Page 9 of 10   Document 38

shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I may not extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 29th day of June, 2020.

                                                s/Lynn Adelman
                                                LYNN ADELMAN
                                                United States District Judge

10

Case 2:19-cv-00813-LA   Filed 06/29/20   Page 10 of 10   Document 38